SOUTHEAST ARKANSAS TELEPHONE & POWER COMPANY
*v.* ALLEN.

4-3976

Opinion delivered October 14, 1935.

*Sid J. Reid*, for appellant.

*Isaac McClellan* and *W. H. McClellan*, for appellee.

BAKER, J.   W. T. Allen sued the Southeast Arkansas Telephone & Power Company for the penalties provided for in § 10,251 of Crawford & Moses' Digest, upon failure of the telephone company to connect the telephone in his residence with the telephone exchange, and to give him service.   He alleged that he had been a renter of the telephone for many years, but that the telephone at his residence had been disconnected since August 8, 1931, although his rentals were then paid up and in advance. On August 26, 1933, after repeated demands, he made demand in writing for service, and offered to comply with the requirements of the telephone company, but the company discriminated against him, refused to give him any service, and by reason thereof he was entitled to the penalties provided in the above and foregoing section of the statutes, amounting to $100, and $5 per day, for 165 days of alleged delinquency, on the part of the telephone company.

The answer to the complaint made specific denials of the allegations set forth therein.   It was also pleaded that the defendant had adopted certain rules for the operation of its business, among these was a requirement for the payment of an installation fee and monthly rental in advance.

Upon these issues the case was developed, but the abstract furnished us contains a report meager in details, with very little order or continuity.   From it, and from statements made in argument, we get the following facts:

Consumers Utilities Company was a prior owner of the telephone properties. It served appellee, but became bankrupt. Its exchange and other properties were sold, and appellant became the purchaser. The Consumers Utilities Company had required customers to pay at least one month's rental, of $1.50, in advance, and also made an installation charge. We do not know what this fee or charge was.

It appears that the plaintiff had paid to the Consumers Utilities Company $20. Of this amount, $2, if not more, was a payment in advance, and this subscriber was insisting that the new company, appellant here, after its purchase of the properties, should give him credit for this payment. The appellant at the time of its purchase took over all of the properties belonging to the former company, including bills and accounts receivable, but it did not assume the obligations of the former company.

The appellee filed his claim in the bankruptcy court for some amount, not shown in this record, which he alleged was due him by the Consumers Utilities Company. On account of the attitude of the plaintiff and his insistence, even at the time of the trial, that he had paid the telephone company in advance, appellant seriously objected and briefs the proposition that appellee was permitted to testify that the appellant is a successor to Consumers Utilities Company. The appellant might as well have admitted this fact. No liability would have followed on account thereof. The mere fact that one company succeeded another in the conduct and management of the business would not make it liable for any debt or obligation of the predecessor. The question and answer could have implied nothing more than the fact that one company succeeded or followed another in the same business; that is to say, the question and answer showed the relative order in time in which the two companies were engaged in the telephone business at Sheridan and surrounding community. If the question and answer meant anything more than that, there is not sufficient abstract of related facts to indicate it. Hence there was no error in the admission of this testimony.

The undisputed testimony, however, shows that the plaintiff made a written demand upon the appellant for service, and this demand was made by letter, dated August 26, 1933, delivered, according to the testimony, on the same date, by Ralph Wilson, to L. D. Murphy, who was then the manager of the telephone company. He admitted the receipt of the letter.

On September 15, 1933, the appellee and W. A. Hines met, and Hines, an employee of the appellant, solicited Allen to become a subscriber, and he testified that Allen refused, and said that the company owed him money; that he refused to comply with the advanced rental requirement, and refused to pay the installation charge. In response to this testimony, the appellee, however, testified that he told Hines that he would pay the rentals in advance, but that Hines advised him that he would have to pay the advanced rentals and installation fee and "drop this thing," that is, his claim for penalties, in order to get the service.

Appellant complains that it was not permitted to show its rules and regulations. Hall, one of appellant's witnesses, testified that its rules and regulations were with the referee at Little Rock. By that statement we understand the appellant to contend that it was following the rules and regulations of the Consumers Utilities Company, a bankrupt. The appellant might, if it so desired, have effectively adopted its predecessor's rules and regulations as its own rules and regulations. But there is no testimony it did this.

The court, however, permitted the company to prove that it operated under a business custom, that all customers must pay rentals in advance and must pay installation charges. The proof was undisputed. Therefore, the only rule appellants insisted upon was established. Their rule as to payment of rentals in advance does not appear to be unreasonable, but reasonable and enforceable. In this case, however, we do not see the necessity or reason for an installation charge against the appellee.

This is particularly true when it is remembered that the telephone had been in the appellee's house, installed,

for eighteen years, but, if it were meant by an installation charge, that there should be some fee paid for the new connection, and the amount was reasonable, the charge might well have been made. These matters are not more fully developed.

These statements in regard to the installation charge must be treated as speculation, because of the meager facts abstracted for our consideration, we are unwilling to be committed to a proposition of correctness of such charge as may have been contemplated. We are only attempting to say that the appellant had a right to make and enforce reasonable rules and regulations governing and controlling its business and dealings with its customers, and to enforce such reasonable rules by requiring that prospective customers comply therewith, as a condition precedent to the delivery of service. *Yancey* v. *Batesville Telephone Co.,* 81 Ark. 486, 492, 99 S. W. 679; *S. W. Tel. & Tel. Co.,* v. *Sharp & White,* 118 Ark. 541, 545, 177 S. W. 25; *Southwestern Telephone Co.* v. *Danaher,* 238 U. S. 482, 35 S. Ct. 886, L. R. A. 1916 A, 1208.

The foregoing was the only rule of the telephone company, so far as appellant has shown us, of any importance to a proper settlement of this case. Appellee offered to comply with this rule. He says that he was prevented from doing so, by a requirement that he surrender his right to sue for penalties accruing to him by reason of the alleged discrimination. The telephone company did not have the right to require him to yield or surrender any claim for penalties as a condition upon which it would render him the service.

It is argued also that it was error for the court to permit the appellee to prove that he had given this written notice, by having the same served or delivered by Ralph Wilson. This contention is without merit, because of the fact that it is not only in testimony, given by the appellee, that he wrote the letter, signed it, gave it to Wilson for delivery to the telephone company, but the manager of the telephone company admits the receipt of this notice and demand. There is no legal requirement that such notice shall be served by any officer, or that

the return of any officer would be *prima facie* evidence of service.

It is argued also in regard to some of the instructions that the court did not state therein that the jury should find the facts only upon a preponderance of the evidence. This is urged as to instructions No. 1 and No. 2, given at request of plaintiff. It was also suggested as error that the court did not tell the jury that plaintiff must comply with all reasonable rules before he could recover. Whatever merit there may have been in these criticisms of the instructions does not appear. Other instructions given may have covered the suggested deficiencies. Appellant does not contend there were not other instructions. The legal presumption by which we are bound is that other instructions were correct and met or supplied any alleged deficiencies in those criticised in the brief. *Sovereign Camp, W. O. W.* v. *Condry,* 186 Ark. 129, 52 S. W. (2d) 638; *Mo. Pac. Railroad Co.* v. *Treece,* 188 Ark. 68, 64 S. W. (2d) 561; *Standard Oil Co.* v. *Richerson,* 188 Ark. 882, 67 S. W. (2d) 1003; *Beason* v. *Withington,* 189 Ark. 211, 71 S. W. (2d) 461; *Fries* v. *Phillips,* 189 Ark. 712, 74 S. W. (2d) 961.

It is also argued that the court erred in not allowing the appellant the privilege of showing by testimony of jurors Warren Douglas and Wilbur Shearer that they were employed by plaintiff, and that they failed to disclose that fact on direct examination by the court and on *voir dire.* This record is not abstracted. We cannot tell from what is furnished us what was asked any juror, nor what answer any juror made. Nor is there any evidence that any juror fraudulently imposed himself upon the court or parties to the litigation. *Gribble* v. *State,* 189 Ark. 805, 75 S. W. (2d) 660; *Newton* v. *State,* 189 Ark. 789, 75 S. W. (2d) 376.

This proposition was fully discussed in the Newton case just cited. It is unnecessary to reargue the matters there set out.

Only one other matter deserves to be mentioned. That is that the appellee at one time sent his check to the appellant company as an advanced fee for service. The check, however, instead of being payable to the ap-

pellant, was payable to the Consumers Utilities Company, then out of business. The check was held for a time, and then returned to the appellee. It must be recognized that the check should have been payable to the defendant company, and we presume that the error in the designation of the payee is the reason for the return of the check. It does not appear, however, that upon the return of the check to the appellee any explanation was made as to why it was returned, nor that any request was made to correct the check by naming the appellant as the payee.

This presentation of this controversy may appear to the reader as somewhat pointless and disconnected, shot through with uncertainties and speculations, but it is our best effort to arrive at and state the issues from the presentation made to us upon the briefs, and to decide them. We must assume that all matters counsel desire to have us consider have been presented.

Appellant has shown us no reason or cause for the reversal of the judgment, and we must therefore assume there was no error.

It is affirmed.